The final case scheduled for oral argument on the calendar today is Jeffrey Wolff v. State University of New York, No. 16553. Thank you. Why don't you wait just a minute until the courtroom is clear, please. Very good. My name is Jeffrey Wolff. I'm a pro se appellant. Mr. Wolff, you know you can raise the height of the podium if you like. On the left there's a button there. Is that good? I might help your back. Thank you. Good. My name is Jeffrey Wolff. I'm a pro se appellant. The complexity of my lawsuit warrants further consideration from this court, and that the district court judge did not allow when reviewing the totality of the facts presented. There are many unresolved issues regarding my case, with the most prominent being SUNY's incapability to produce the name of the female who made me a marked man and forced faculty to watch me closely after informing Kim Rombach and Beth Klein that I caused them emotional distress. This person is believed to be Michael Catton, now known as Michael Williams. And I can prove to a jury that she was the monkey that tricked the cat into burning his paw. It took a court order to uncover the faculty's names in the rejected police report, including Catton, who finally admitted to a sexual relationship after years of denial to officials through court-ordered interrogatories. This brings me to my next unresolved issue. Catton's sexual harassment claims have always trumped any assertion that I have made regarding the true nature of my dismissal. And it was never made clear that the lies and allegations that she made in her sealed affidavit to magistrate Judge Hummel were the reasons behind my dismissal. Judge Hummel then declared a conflict of interest because of the evidence I presented contrary to her affidavit. With that being said, Judge Sands did not act as an impartial arbitrator and gave both SUNY and Catton all the benefits of the doubt when she discriminately dismissed my lawsuit, even after I had proven that Catton had lied under oath in her sealed affidavit. Mr. Wolf, could you talk about the student teaching contract that SUNY gave you and what made you unwilling to sign that? I did sign that contract. You did? I signed it on the date of September 1st, 2011. But that was after a considerable uncertainty about it. Didn't you reject it initially? I never rejected the contract. I said that I was uncomfortable with the wording within the contract, and I made many phone calls to SUNY faculty. What wording were you uncomfortable with? Yes. They told me that I was lazy, unmotivated, disinterested, and I caused a mini culture of tension and intimidation with my peer candidates. So you didn't want to acknowledge that? No, because that was untrue. And what process do you think you should have been given before your teaching contract ultimately was terminated? They withheld numerous facts regarding that contract that they gave to me. Mr. Wolf, if that contract was unfair and lying, and you refused to sign it or were uncomfortable with it, and being uncomfortable with it was grounds for them firing you, was the reason they fired you, even if that was wrong and wrong under state law, that isn't a federal claim. You see, a federal claim isn't because they treated you wrongly. That may be a contract claim. We can only step in if you were fired for some reasons which have to do with race, sex, etc., etc. Yes. So that the fact that the contract may have been a nasty one, and because it was a nasty one, you didn't sign it when they wanted, and because you didn't sign it when they wanted, they then kicked you out may be terrible, but we may not be able to do anything about that. I understand. That contract was brought about due to sexual harassment allegations from Michael Cadden, which they then hid. There was everything that was written in the contract. Was that in the contract? No, that was not. That was their facade that they used to get rid of me. How do we know that that, what evidence is there that that contract was just a facade for his sexual behavior? The police report. The redacted police report that they filled out regarding Michael Cadden coming forward to file sexual harassment allegations against me, in which she did not. And there were multiple things written within that police report stating that I cheated, I plagiarized. They were trying to dismiss me on that. You'll have three minutes on rebuttal. Maybe we could go ahead and hear what SUNY and Ms. Williams have to say, what their counsel do, and then you'll have a chance to respond. All right? Please have a seat. It goes up and down. Thank you, Judge. Good morning, Your Honors. Suzanne Galvado, Bond, Shenick, and King. On behalf of the defendants, SUNY Courtland, as well as the individual defendants, except for Ms. Williams, who is separately represented. We're asking that the court affirm the judgment of the district court because Mr. Wolf's academic dismissal from the master's program at SUNY Courtland was based on legitimate, non-discriminatory reasons unrelated to his gender. And he was afforded more than the minimal process that was due in the context of an academic dismissal. With respect to his Section 1983 claims, the district court probably dismissed the procedural due process claim against the individual defendants because Mr. Wolf was afforded more than the minimal process that was due, which was, under the Constitution, notice and a careful and deliberate ultimate decision. Let me ask you a question about the process. My understanding is that two of the administrators who made the initial decision to terminate Mr. Wolf's teaching position also sat on the appeals board, the teacher education board of appeals. Why does that not raise a procedural concern, a due process kind of concern? It is correct that those two sat on the appeals board as well as two other members of the appeals board. And Mr. Wolf's complaint appears to be that that appeals board made an ultimate decision. They, in fact, made a recommendation to Dean Lachance, who made the ultimate decision. But more importantly, that does not offend the Constitution because the Constitution requires notice and a careful and ultimate deliberative decision, not necessarily an appeal. So the appeal and his claim about the appeal process does not violate the minimal requirements under the Constitution for an academic dismissal. But the first and then up to the dean, would that meet the Constitution? There was notice in this case. There was the. If there had been no appeal review, the decision and then up to the dean, without this intermediate step, would procedural due process have been met? Yes, because that that decision was still the product of a careful and deliberative process. Your argument is it doesn't matter if the appellate tribunal was simply rubber stamping the original, which you don't say it was. But even if it was, it wouldn't matter because that was enough process under. Do you have any cases for that? That is correct. That is our argument, Judge. Do you have any cases? We rely on the cases that stand for the proposition that when those minimal requirements are met, you need not find fault with the extra layer that was provided. More than minimal process was provided here, and therefore it does not offend the Constitution. And even if Mr. Wolf had raised an issue of fact on those points, the defendants are entitled to qualified immunity because there was no violation of a clearly protected constitutional right. Are there any cases that deal in the context of academic discipline with appellate decision makers who have knowledge of the facts and whether that deprives a person of due process? Whether at the appellate level in an academic setting, you have to have people who come to the situation without any prior knowledge of the facts? No, Judge, we've not cited any cases to that effect. We've relied on the cases that stand . . . Either way. Not that I'm aware of. Either way. Not that I'm aware of. Yeah, because, you know, the argument that because somebody does not have a right to an intermediate appeal, that then if the intermediate appeal were biased, I'm not saying it is, but were biased, that isn't a violation of due process. It's an odd one because it may be that somebody doesn't have a right to a jury trial, say, but if a jury trial is given, then the jury still has to be an adequate jury. There is a jump between you don't have a right to something, but if that then is given, that that can be unfair. Isn't there? No, Your Honor, because it's not constitutionally required at that point. So it's more . . . he was accorded more than the process that is due. We did not have a biased process with the appeal. And furthermore, the defendants are still entitled to qualified immunity because that was not a clearly established constitutional requirement at that time. Turning to the Title IX . . . Just take a moment to say something about Title IX because your time is up. Thank you, Judge. The dismissal from the master's program was based on legitimate nondiscriminatory reasons not related to Mr. Wolfe's gender, and for that reason, we ask that the court affirm the judgment of the district below as well as the equal protection claims as well. Thank you, Judge. Ms. Guy? May it please the Court? Leslie Guy, Hinman, Howard, and Cattell, and I represent Michael Williams. The theme, I think, of this case factually is the plaintiff . . . Speak right into the microphone. Sorry. The theme of this case, I think, is the plaintiff's failure to take responsibility for his actions, and that is what resulted in the initial letter, the conduct letter that he received back in December, and then the contract that he received prior to student teaching, which he did advise SUNY that he was not going to sign the day before he, in fact, did sign it, and then went to orientation against SUNY's direction not to go. But as it pertains to my client, Ms. Williams, she is not a state actor. But if, as Mr. Wolfe has alleged, she made false complaints about him to school administrators, could we find that she was acting in concert with the school and that the district court was wrong in holding she wasn't liable under . . . That is Mr. Wolfe's argument, but he has not proven that. In order to prove any kind of conspiracy, there has to be some showing that there was joint activity or an agreement, a plan to do something harmful that would injure the plaintiff. Here, there's no evidence of that whatsoever. In fact, it's . . . No, the case law says . . . It may be a basis for a different suit. It may be, but the case law is pretty clear that a communication by itself, even if it's false, without some evidence of a plan or concerted activity does not establish a conspiracy. You don't think that there was enough in his allegations giving her . . . She had been at this school for 14 years, albeit in a different capacity, and presumably knew some of the players here. That's an insufficient basis for . . . It is, Your Honor, and also the SUNY defendants are very clear that they did not consider that, did not even know about it, and the timing of the initial problem with his conduct was before any of the allegations that he makes regarding my client. So he was having considerable issues in the program before . . . This is summary judgment. Is a statement by the SUNY people that they didn't consider it or that they didn't know of it a fact that is in dispute, or is it a fact that is not in dispute because no evidence to the contrary was presented? It is not in dispute. In fact, there's no . . . Not only is there no evidence to the contrary, all of the evidence from all of the SUNY defendants and my client and even Mr. Wolf are that they did not know about this. In theory, it could be a matter in dispute, but you say that in this context, it is not because there's no evidence presented in summary judgment to the contrary. Is that your . . . Correct. In fact, everybody is in agreement on that, including Mr. Wolf, in terms of the timing. We'll hear that from Mr. Wolf. And then the final, just very briefly on the cat's paw issue, Mr. Wolf has that backwards. The cat's paw is a method for holding in the employer or, in this case, the university, not the individual. And so she, Ms. Cadden-Williams, has no liability under the statutes that have been asserted by Mr. Wolf. Thank you very much. Thank you. Mr. Wolf, you have three minutes for a rebuttal, please. With regards to my academic dismissal, it was more of a disciplinary dismissal for failure to not sign that contract. My GPA as a student there was a 3.84 GPA. I was very good at the work that I did. I was a very hard worker, while also being accused of plagiarism and cheating. They checked into my plagiarism and cheating, and they checked into all my work and found no evidence that I cheated or plagiarized, including in that police report saying that I was dishonorably discharged from the military, which Michael Cadden stated, including the cheating. They checked into that and they found no evidence of me being dishonorably discharged from the military. With regards to SUNY and the fair process policy that they dismissed me on, yes, there were two of the four board members that had already made decisions to dismiss me before being placed into that board of appeals. They also had vested interest in the outcome of my appeal, and decidedly so, so did the dean, Andrea Lachance, who they gave their recommendation to. All three had decided long before this hearing, and they deemed me a deviant and a miscreant based on the lies of Michael Cadden, which also violated my due process, and has been stated in Terrence Williams versus Pennsylvania 15-5040. The district judge, much like SUNY, did not allow my side of the story to be heard in a court of law, and violated my constitutional rights by not allowing the factual evidence to be presented to an impartial jury, proving that SUNY covered up numerous allegations, including sexual harassment, while soliciting information from faculty. What was that evidence that was not allowed? I saw that in your brief and found it interesting, but I didn't see specific evidence referred to. What was the specific evidence you sought to have introduced which was not accepted? I informed faculty that I had a relationship with Michael Cadden after an incident that happened in the summer of 2011, and I had felt that she had been talking negatively about me to professors, because she had been talking negatively about me to classmates, and they had been treating me differently. After informing them of that relationship, they subsequently brought her in, and she then flipped the script and informed them that she had no kind of relations with me, and that I stalked her, sexually harassed her, cheated, plagiarized, and was dishonorably discharged from the military. Then they went on a witch hunt after that to dismiss me from the program. What was the evidence that you sought to introduce to the district court? There were e-mails that were written by faculty in December or November 29th of 2010, two days before the December 1st incident in which I was written up for causing emotional distress to a classmate, an unnamed classmate at that, one day after I broke up with Michael Williams, or Michael Cadden. Okay, thank you very much. I think we have the arguments. We will reserve decision. Thank you so much. That concludes our calendar for oral argument today. We have two cases on submission, Mace v. Marcus Whitman Central School and United States v. Thomas. We will consider those and reserve decision. Thank you very much. The clerk will adjourn court. Court is adjourned.